TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4443
    Facsimile: (213) 894-0141
    E-mail:    lindsey.dotson@usdoj.gov
MICHAEL J. SONGER
Trial Attorney
Department of Justice Civil Rights Division

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM STEPANYAN and<br>HARUTYUN HARRY CHALIKYAN,<br><br>    Defendants. | No. CR 21-00188-SVW<br><br><u>GOVERNMENT'S SENTENCING POSITION</u><br><u>FOR DEFENDANTS WILLIAM STEPANYAN</u><br><u>AND HARUTYUN HARRY CHALIKYAN</u><br><br>Hearing Date: February 7, 2022<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>    Hon. Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Lindsey Greer Dotson, and Department of Justice Trial Attorney Michael J. Songer, hereby files its sentencing position for defendants WILLIAM STEPANYAN and HARUTYUN HARRY CHALIKYAN.

///

///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 6, 2022          Respectfully submitted,

                                           TRACY L. WILKISON
                                           United States Attorney

                                           SCOTT M. GARRINGER
                                           Assistant United States Attorney
                                           Chief, Criminal Division

                                           */s/ Lindsey Greer Dotson*
                                           LINDSEY GREER DOTSON
                                           Assistant United States Attorney

                                           MICHAEL J. SONGER
                                           Department of Justice Trial Attorney

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Motivated by hate, defendants WILLIAM STEPANYAN and HARUTYUN HARRY CHALIKYAN attacked a Turkish restaurant and five people inside whom they perceived to be Turkish.  Angry with Turkey for its support of Azerbaijan in a border conflict with Armenia, defendants and at least nine other people drove to a family-owned Turkish restaurant to wreak havoc.  After sending a text message saying that he was going "hunting for [T]urks," defendant STEPANYAN did just that.  He and defendant CHALIKYAN stormed a local Turkish eatery, attacked the victims inside, and decimated the restaurant.  Defendants shouted threats and slurs, at one point even threatening to kill the victims.

For this attack, a federal indictment charged defendants with Conspiracy, in violation of 18 U.S.C. § 371, and five Hate Crimes, in violation of 18 U.S.C. § 249(a)(2).  Defendants pleaded guilty to Count One (Conspiracy) and Count Four (Hate Crime).  With corrections to the United States Sentencing Guidelines ("Guidelines") calculations, as detailed herein, the Total Offense Level is 25.  Given their respective criminal histories, defendant STEPANYAN's Guidelines range is 84 to 105 months, while defendant CHALIKYAN's is 57 to 71 months.  Consistent with the plea agreements reached with both defendants, the government recommends a sentence of 84 months for defendant STEPANYAN and 57 months for defendant CHALIKYAN, followed by three years of supervised release for both.  These sentences are the minimum necessary to punish, deter, and send a powerful message to the community that hate crimes will not be tolerated.  In addition, to compensate Victim A for the damage to

Business A and property stolen during the attack, the government further seeks a restitution award of $21,200 for Victim A.

## II. STATEMENT OF FACTS[1]

### A. The Attack

Defendants identify as members of the Armenian-American community and supported Armenia in the fall of 2020 when renewed hostilities broke out between Armenia and Turkish-backed Azerbaijan. On or about November 4, 2020, defendant STEPANYAN sent a text message saying that he planned to go "hunting for [T]urks." A group of approximately nine individuals, including defendants, later drove to Business A, which was a family-owned Turkish restaurant. The group chose Business A as a site to express anti-Turkish and pro-Armenian sentiment because they considered the restaurant symbolic of Turkey and believed that Turkish people would be present. During the drive to Business A, defendant STEPANYAN ranted about hating "Turks."

Upon arriving at Business A, defendants agreed to attack Business A and the Victims[2] inside because of the Victims' perceived and/or actual national origin (Turkish). Defendants each picked up a dining chair from the outdoor seating area and threw the chair to the ground. When they entered the restaurant, one of the defendants shouted at the Victims: "Are you Turkish?" Defendant STEPANYAN then kicked over a plexiglass barrier and tables and rushed toward Victims A, B, and D, who were near the back of the restaurant. Defendants shouted, among other things: "Turks!"; "Ah! Armenia!"; "Azerbaijan!";

---

[1] The Statement of Facts is based on the Factual Basis in each of defendants' plea agreements.

[2] Victims A, B, C, and D were of Turkish descent, while defendants perceived Victim E to be of Turkish descent. Victim A operated Business A. Victim B was related to Victim A and regularly worked at the restaurant. Victims C, D, and E worked at Business A.

2

"You Azerbaijan Turk!"; and "Artsakh is Armenia!" One of the defendants shouted: "We came to kill you! We will kill you!" Defendant STEPANYAN attempted to attack Victim B, as Victim B tried to defend himself/herself and the other Victims. The defendants threw hard wooden chairs at the victims, overturned tables, and shattered glassware. Each defendant threw at least one chair toward the Victims.

### B. Results of the Attack

As a result of the attack, multiple Victims suffered physical injuries and felt physical pain. For instance, Victim B was injured when a hard object struck him/her in the back. Victims B and D sustained physical injuries as they fled the restaurant. Victim C hit a wall as he/she ducked from a chair thrown at him/her, sustained physical injuries, and afterward lost control of his/her legs and collapsed multiple times due to the injury.

In addition, defendants damaged Business A. Both defendants smashed Business A's glassware. Defendant STEPANYAN ripped out Business A's computer terminals and stole Victim A's iPhone, which Victim A had left behind as he/she fled. In sum, the damage to Business A totaled at least $20,000. Business A also had to close temporarily, resulting in thousands of dollars of lost revenue for each day the restaurant was closed.

## III. ARGUMENT

### A. The United States Sentencing Guidelines Calculations and Government's Objections to the Presentence Reports

The Presentence Reports ("PSRs") for both defendants correctly calculate the Base Offense Level, two specific offense characteristics, and one victim-related adjustment. The Base Offense

3

Level is 14 under U.S.S.G. § 2A2.2. A four-level increase for defendants' use of a dangerous weapon (a chair) is correct under U.S.S.G. § 2A2.2(b)(2)(B).[3] Because defendants intended to commit bodily injury and did, in fact, injure multiple Victims, including Victim C as charged in Count Four, a three-level increase is appropriate under U.S.S.G. § 2A2.2(b)(3)(A). Finally, because defendants targeted the Victims on account of their national origin, a three-level increase under U.S.S.G. § 3A1.1(a) is warranted.

In two respects, however, the government objects to the PSRs. First, the government objects to the suggestion that Business A is a "victim." (See, e.g., dkt. 56, ¶ 83; dkt. 58, ¶ 86.) Business A cannot be a "victim" under Section 249; victims must be "persons." 18 U.S.C. § 249(a)(2). The Victims here are Victims A, B, C, D, and E, as charged in the indictment. Although damage to Business A can absolutely be a basis for restitution to Victim A, Business A should not be considered a "victim" for purposes of calculating the multiple count adjustment.

Second, the PSRs are correct that a multiple count adjustment is appropriate to account for the harm to each of the five Victims. However, for the reasons indicated above, there should only be five Groups -- one Group for each of the five Victims -- not six Groups, as the PSR currently indicates. (See, e.g., dkt. 56, ¶ 83; dkt. 58, ¶ 86.) The Base Offense Level for each of the Victims is 14 under

---

[3] A "dangerous weapon" includes "any instrument that is not ordinarily used as a weapon (e.g., a car, **a chair**, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2, App. Note 1 (emphasis added); see United States v. Dayea, 32 F.3d 1377, 1379 (9th Cir. 1994) (noting the broad scope of what constitutes a "dangerous weapon").

4

U.S.S.G. § 2A2.2.[4] The adjusted offense level for Victims B, C, and D, who suffered bodily injury, is 24.[5] The adjusted offense level for Victims A and E, who narrowly escaped bodily injury after defendants threw chairs at them, is 21.[6] As such, with three Groups each having an adjusted offense level of 24 and two Groups each having an adjusted offense level of 21, the total number of units is five under U.S.S.G. § 3D1.4(a). According to the table in U.S.S.G. § 3D1.4, the multiple count adjustment is therefore a four-level increase.

Accordingly, the correct offense level calculation for both defendants is as follows:

| | | |
|---|---|---|
| Base Offense Level | 14 | [U.S.S.G. § 2A2.2] |
| Dangerous Weapon | +4 | [U.S.S.G. § 2A2.2(b)(2)(B)] |
| Bodily Injury | +3 | [U.S.S.G. § 2A2.2(b)(3)(A)] |
| Hate Crime Motivation | +3 | [U.S.S.G. § 3A1.1(a)] |
| Multiple Count Adjustment | +4 | [U.S.S.G. § 3D1.4] |

---

[4] The PSR correctly states that U.S.S.G. § 2A2.2 dictates the Base Offense Level of 14 for a hate crime attack, which was the object of the conspiracy charged in Count One and the crimes charged in Counts Two through Six: "The guideline for a violation of 18 U.S.C. § 249(a)(2) is [U.S.S.G.] § 2H1.1. Pursuant to § 2H1.1(a)(1), the offense level from the offense guideline applicable to any underlying offense. Here, the offense of aggravated assault occurred which is governed by § 2A2.2." (E.g., dkt. 56, ¶ 29.) The Base Offense Level of 14, which the PSR correctly applies for Victim C, is correct for all five of the Victims.

[5] The Guidelines calculation for Victims B, C, and D is as follows: 14 (Base Offense Level, U.S.S.G. § 2A2.2) + 4 (dangerous weapon, U.S.S.G. § 2A2.2(b)(2)(B)) + 3 (bodily injury, U.S.S.G. § 2A2.2(b)(3)(A)) + 3 (hate crime motivation, U.S.S.G. § 3A1.1(a)) = 24.

[6] The Guidelines calculation for Victims A and E is as follows: 14 (Base Offense Level, U.S.S.G. § 2A2.2) + 4 (dangerous weapon, U.S.S.G. § 2A2.2(b)(2)(B)) + 3 (hate crime motivation, U.S.S.G. § 3A1.1(a)) = 21.

5

|   |   |
|---|---|
| Acceptance of Responsibility -3 | [U.S.S.G. § 3E1.1] |
| **Total Offense Level** | **25** |

Because defendant STEPANYAN falls in Criminal History Category IV, his Guidelines range is 84 to 105 months. Pursuant to the terms of the parties' plea agreement (dkt. 50, p. 3), the government recommends a low-end Guidelines sentence of 84 months for defendant STEPANYAN.

Because defendant CHALIKYAN falls in Criminal History Category I, his Guidelines range is 57 to 71 months. Pursuant to the terms of the parties' plea agreement (dkt. 52, p. 3), the government recommends a low-end Guidelines sentence of 57 months for defendant CHALIKYAN.

### B. The Government's Recommended Sentences Are Sufficient, But Not Greater Than Necessary, to Adequately Punish and Deter

In determining a sufficient sentence, courts must consider the nature and circumstances of the offense, weigh the history and characteristics of each defendant, and impose a sentence that reflects the seriousness of the offense and provides just punishment. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Any sentence must promote respect for the law, afford adequate deterrence, and protect the public from future crimes. 18 U.S.C. § 3553(a)(2). With these factors in mind, the government's recommended sentences -- 84 months for defendant STEPANYAN and 57 months for defendant CHALIKYAN -- are sufficient, but not greater than necessary, to adequately punish and deter.

Driven by hate, defendants' attack was deplorable. Defendants assaulted five strangers simply because of their ancestry. Defendants hurled chairs, slurs, and death threats, terrorizing the

Victims and a community in the process. In their wake, defendants left, not just physical scars, but emotional trauma and economic damage to a family business. A lengthy prison sentence is imperative to send a message to defendants and the community that hate crimes are serious and carry meaningful punishment.

A lengthy sentence is perhaps equally important for general deterrence of bias-motivated crimes. By attacking a family-run business simply because of the ancestry of its owners, the defendants wanted to send a message of hate that echoed beyond the restaurant's walls. This Court should instead send the message that such crimes will not be tolerated and will be met with severe consequences.

That said, while a lengthy prison sentence is necessary for both defendants, their varied histories and characteristics warrant different sentences. Defendant CHALIKYAN has no criminal history, which accounts for his shorter recommended sentence of 57 months. Defendant STEPANYAN, on the other hand, has amassed three criminal convictions at just 23 years of age. (Dkt. 56, ¶¶ 95-97.) One of those convictions was Assault With a Deadly Weapon, for which he was on probation at the time of the instant offenses. (Id. at ¶ 99.) Despite multiple brushes with the law and three custodial sentences, little has deterred him. Indeed, his crimes appear to have only escalated in severity over time. For this reason, a significant sentence of 84 months is more than warranted -- his conduct here was egregious, the instant attack coupled with his past show a proclivity for violence, and shorter sentences have yet to deter his dangerous behavior or promote any respect for the law.

### C. Restitution

The indictment alleges, and both defendants agree in their respective plea agreements, that the damage to Business A totaled at least $20,000. (Dkt. 50, p. 9; dkt. 52, p. 9.) Defendants also accept that defendant STEPANYAN stole Victim A's iPhone during the attack. (Id.) As noted in the PSRs, the value of that iPhone was $1,200. (Dkt. 56, ¶ 20; dkt. 58, ¶ 23.) Accordingly, with the $20,000 in damage to Victim A's restaurant combined with the $1,200 loss for Victim A's iPhone, the government respectfully requests a restitution award for Victim A in the amount of $21,200.[7]

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant STEPANYAN to 84 months in prison and defendant CHALIKYAN to 57 months in prison, followed by three years of supervised release for both defendants. The government also respectfully requests that defendants be held jointly and severally liable for restitution to Victim A in the amount of $21,200.

---

[7] As of the date of this filing, the government has yet to receive victim impact statements and reserves the right to request additional restitution if warranted.

8